DANNIE RAY WALKER, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 22968

July 1, 1994 876 P.2d 646

*Morgan D. Harris,* Public Defender and *Stephen J. Dahl,*
Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex
Bell,* District Attorney and *James Tufteland* and *Ulrich W. Smith,*
Deputy District Attorneys, Clark County, for Respondent.

# OPINION

By the Court, ROSE, C. J.:

Appellant Dannie Ray Walker (Walker) was convicted of three counts of attempted murder with the use of a deadly weapon for firing shots at three rival gang members in a gas station parking lot. At trial, Walker requested that the jury be instructed as to the offense of assault with the use of a deadly weapon, and the district court refused. We conclude that the district court erred in declining to instruct the jury as to the lesser included offense of assault with the use of a deadly weapon, and we reverse Walker's three convictions for attempted murder and remand the case for a new trial.

## FACTS

On August 6, 1990, Patrick Darrett (Darrett), Earnest Hines (Hines), and Paul Synagogue (Synagogue) pulled into an AM/PM Mini-Mart (AM/PM) in a notorious gang area of Las Vegas to purchase gas. A faction of the Crips street gang, known as the Gerson Park Kingsmen, is known to "control" the area around the AM/PM. Walker was identified at trial as a member of this Crips street gang. The colors of the Gerson Park Kingsmen are green and black, and Walker wore green and black at the time of the shooting.

Darrett, at the time of the shooting, wore red and black, the colors of the Bloods street gang. Hines and Synagogue were two notorious members of the Bloods street gang. While Darrett was in the process of purchasing gas, Walker, standing just outside the store, addressed Darrett, saying "What up cuz," to which Darrett replied, "What up Blood?" Hines testified that this exchange is intended, in the street gang subculture, to be offensive and to be a challenge. Hines testified that, once such an exchange takes place, "they [the parties involved] supposed to, you know, get um up," and that the words are "[s]hooting words, or fighting words, whichever way it goes." Hines also testified that "[t]he colors speak just as well as the words," and that gang members will shoot, stab, or fight members of a gang who wear colors in the rival gang's territory.

After the exchange of words, Darrett returned to the rear of his

car, where Hines and Synagogue stood, to start pumping gas. A person dressed in green and black, identified as Walker at trial, began walking toward the front of Darrett's car, shooting at Darrett, Hines, and Synagogue with what appeared to be a semi-automatic handgun capable of rapid fire. At the time the shooting started, Walker was approximately forty to forty-five feet from Darrett, Hines, and Synagogue. Darrett, Hines, and Synagogue ducked behind Darrett's car as Walker continued to advance while firing. Walker advanced to the front of the car, at which point he stopped firing, but continued to point the gun at the three victims. As Walker started to walk around the front of the car, the victims stood up, at which point Walker began firing again and the victims ran. As Darrett, Hines, and Synagogue were running away, Walker continued to fire, and he chased the three victims as far as the end of the AM/PM parking lot. Darrett, Hines, and Synagogue escaped from the AM/PM without being shot. Hines testified that he heard one or more bullets whistle past him, and that he saw flashes of light but did not actually see a gun.

A police investigation for physical evidence of the discharge of firearms at the AM/PM revealed nothing. The police were unable to find any shell casings, projectiles, bullet holes,[1] ricochet marks, or broken glass at the AM/PM. Witnesses testified that none of the bullets fired at the victims collided with the gas pumps, Darrett's car, or anything else. The handgun allegedly used by Walker was never found.

Walker was charged with three counts of attempted murder with the use of a deadly weapon. Walker was tried before a jury for the attempted murders of Darrett, Hines, and Synagogue, and on September 6, 1991, the jury returned verdicts of guilty as to all three counts.

## DISCUSSION

At trial, Walker requested that the district court give a jury instruction allowing the jury to find Walker guilty of the lesser included or lesser related offense of assault with a deadly weapon if the jury felt the facts did not support the attempted murder charges. The district court refused to give the instruction, stating that "[t]here is no lesser included offense for an attempt to kill" and that the instruction was not consistent with the defense's theory of the case. Walker contends the district court erred in refusing to give the instruction, and we agree.

---

[1]There were many bullet holes in the wall of the AM/PM store, but the police were unable to determine which holes were fresh and which were created by previous shootings.

In Moore v. State, 105 Nev. 378, 776 P.2d 1235 (1989), we stated:

> Instructions on lesser offenses are required because a procedure which affords the trier of fact no option other than conviction or acquittal when the evidence shows that the defendant is guilty of some crime but not necessarily the one charged, increases the risk that the defendant may be convicted notwithstanding the obligation to acquit if guilt is not proven beyond a reasonable doubt. The pressures which create that risk thus affect the reliability of the fact finding process and thereby undermine the reasonable doubt standard.

*Moore,* 105 Nev. at 383, 776 P.2d at 1238 (quoting People v. Geiger, 674 P.2d 1303, 1307-08 (Cal. 1984)). However, a defendant is not entitled to present to the jury "a shopping list of alternatives to the crimes charged." *Moore,* 105 Nev. at 383, 776 P.2d at 1239. A defendant may only demand a jury instruction on a lesser included offense when the following conditions are satisfied: (1) the offense for which the instruction is sought is a lesser included offense of the charged offense, (2) the defendant's theory of defense is consistent with a conviction for the lesser included offense, and (3) evidence of the lesser offense exists. *See* Lord v. State, 107 Nev. 28, 36, 806 P.2d 548, 553 (1991); *Moore,* 105 Nev. at 383, 776 P.2d at 1239; Ruland v. State, 102 Nev. 529, 531, 728 P.2d 818, 819 (1986); Kiper v. State, 98 Nev. 593, 595, 655 P.2d 526, 526-27 (1982); Block v. State, 95 Nev. 933, 936, 604 P.2d 338, 340-41 (1979).

*Lesser included offense*

The district court found that assault with a deadly weapon is not a lesser included offense of attempted murder with the use of a deadly weapon. This was clear error.

In Crawford v. State, 107 Nev. 345, 811 P.2d 67 (1991), we stated that a crime is a lesser included offense if the greater offense cannot be committed without committing the lesser offense. *Id.* at 351, 811 P.2d at 71; *see Block,* 95 Nev. at 936, 604 P.2d at 340-41. "Attempt" is defined, in part, in NRS 193.330 as "[a]n act done with intent to commit a crime, and tending but failing to accomplish it." Attempted murder requires a specific intent to kill the person or persons against whom the acts in question are directed. Graves v. State, 82 Nev. 137, 142, 413 P.2d 503, 506 (1966). "Assault" is defined in NRS 200.471 as "an unlawful attempt, coupled with a present ability, to com-

mit a violent injury on the person of another." The only difference in this case, then, between attempted murder with the use of a deadly weapon and assault with a deadly weapon is whether at the time of the shooting Walker intended to kill the three victims or whether he intended merely to injure them. Since an intent to injure is a subset of, and necessarily included in, an intent to kill, and since one cannot intend to kill without also intending to injure, we conclude that assault with a deadly weapon is a lesser included offense of attempted murder with the use of a deadly weapon.

This conclusion comports with our opinion in Ruland v. State, 102 Nev. 529, 728 P.2d 818 (1986). In *Ruland*, the defendant was convicted of attempted murder and resisting arrest. *Id.* at 530, 728 P.2d at 818. The defendant claimed the trial court erred in refusing to instruct the jury on a number of lesser included offenses relating to assault. *Id.* at 530, 728 P.2d at 819. We stated, "The first lesser-included offense instructions which [the defendant] requested can be characterized as 'lesser assaults.' An assault with a dangerous weapon or an assault with intent to kill are assaults of a degree and severity less than that of attempted murder." *Id.* at 531, 728 P.2d at 819. While we determined that the defendant in *Ruland* was not entitled to the assault instructions because the defendant testified that the gun accidentally discharged, and therefore the assault instructions were inconsistent with the defendant's theory of the case, we nonetheless recognized assault with a deadly weapon as a lesser included offense of attempted murder. *Id.* at 531-32, 728 P.2d at 819-20; *see* Graves v. State, 84 Nev. 262, 265, 439 P.2d 476, 477, *cert. denied*, 393 U.S. 919 (1968) ("assault with intent to kill may be a lesser included offense of attempted murder if there is evidence of assault"); Graves v. Young, 82 Nev. 433, 438, 420 P.2d 618, 620-21 (1966) ("[t]here is a question whether under prosecution for attempted murder, assault with intent to kill may be a lesser included offense. If there is evidence of an assault we hold that it would be. . . . If there were no evidence of an assault, it would not be a lesser included offense. Attempted murder can be committed with or without assault").

*Consistency with defendant's theory of defense*

To be entitled to an instruction as to a lesser included offense, the defendant's theory of defense must be consistent with a conviction for the lesser offense. *See Moore,* 105 Nev. at 382, 776 P.2d at 1238 ("Nevada law requires jury instructions on defendant's theory of the case when the theory involves a defense or a lesser included offense"); *Ruland,* 102 Nev. at 531, 728 P.2d at 819 (defendant is entitled to a jury instruction on his or her

theory of the case; defendant is not entitled to a jury instruction as to a lesser included offense where such an instruction would be inconsistent with the defendant's theory of the case as evidenced by the defendant's own testimony); *Block,* 95 Nev. at 936, 605 P.2d at 340 (where there is "any reasonable theory of the case under which the defendant might be convicted of a . . . lesser included offense," the court must, if requested, instruct on the lesser included offense); Lisby v. State, 82 Nev. 183, 187-88, 414 P.2d 592, 595 (1966) (a lesser included offense instruction is unnecessary "where the defendant denies any complicity in the crime charged and thus lays no foundation for any intermediate verdict"). The district court found this requirement was not satisfied because the defendant's primary theory of defense was that Walker was not the gunman.

Yet, at the hearing to settle the jury instructions, defense counsel maintained that his theory of defense included arguing to the jury in closing that, even if the jury found that Walker was the gunman, Walker did not have the intent to kill. Defense counsel stated:

> Your Honor, in this case the Defendant's, one of the Defendant's theories, aside from the fact that he wasn't there, is that if you, ladies and gentlemen of the jury, even if you find that he was there, you cannot state beyond a reasonable doubt that the State has proven that he intended to kill the three individuals that were being shot at that night.

At trial, defense counsel elicited testimony that, although the gunman was very close to the victims when he was shooting, he did not hit the victims or any other object. This supports a defense theory that the reason nobody was hit, despite the gunman's proximity to the victims, was because the gunman was not shooting with the intent to kill. In closing argument, the defense stated:

> And that brings me to the next part, the intent to kill. You have to consider the circumstances surrounding the act itself and if you find that there was an attempt to kill based upon what the evidence was and what the circumstances surrounding the event were, then you can find that it was attempt murder. Now, if it wasn't attempt murder, unfortunately, it was nothing. And if you stood next to someone and pointed a gun right at them and you shot and you intended to kill them from this distance, you could at least hit them, you could at least hit something around them. Just because someone saw fire come out of something doesn't mean that someone was trying to kill them. And I would submit to you that if there was no deadly weapon, there was no attempt murder. I don't

know what he was shooting but something was wrong because there weren't any holes.

The defense was entitled to proceed on the disparate theories that Walker was not the gunman and that Walker, if he was the gunman, did not intend to kill the victims. We conclude that a conviction for assault with a deadly weapon would have been consistent with the defendant's theory of defense.

## Evidence of the lesser offense

To mandate an instruction on a lesser included offense, there must be "some evidence, no matter how weak or incredible," such that, if believed, it would support a conviction on the lesser offense.[2] Ruland v. State, 102 Nev. 529, 531, 728 P.2d 818, 819 (1986); Williams v. State, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983); see Hillis v. State, 103 Nev. 531, 535, 746 P.2d 1092, 1094 (1987) ("[w]hen there is no evidence at trial tending to reduce the greater offense, an instruction on a lesser offense may be properly refused"); Block v. State, 95 Nev. 933, 936, 604 P.2d 338, 340 (1979) (instruction is necessary where there is "any evidence at all, however slight," of the lesser offense). The record contains evidence suggesting that Walker did not intend to kill Darrett, Hines, and Synagogue. Testimony was elicited at trial that Walker was very, very close to the three victims when he was shooting—closer than a car-length. Yet, Walker never hit any of the victims. Testimony was also elicited that, at one point, the direct line of fire between Walker and the victims was through

---

[2]In Moore v. State, 105 Nev. 378, 776 P.2d 1235 (1989), we expanded the defendant's right to the submission of jury instructions from instructions concerning lesser included offenses to instructions concerning lesser related offenses. *Id.* at 382-83, 776 P.2d at 1238. A defendant may demand a jury instruction on a lesser related offense when the following conditions are satisfied: (1) the lesser offense is closely related to the offense charged, (2) the defendant's theory of defense is consistent with a conviction for the related offense, and (3) evidence of the lesser offense exists. Lord v. State, 107 Nev. 28, 36, 806 P.2d 548, 553 (1991); *Moore,* 105 Nev. at 383, 776 P.2d at 1239. In *Lord,* we defined lesser related offenses as "offenses which are related to the principal offense but are *not* lesser included offenses of the principal offense." *Lord,* 107 Nev. at 36, 806 P.2d at 553.

While prongs two and three of this "lesser related offense" test appear to be identical to those of the "lesser included offense" test set forth in this opinion, they are not. Where a jury instruction is sought on a lesser related offense, a more stringent showing of evidence as to the lesser offense (prong three) is required. "Before a lesser, non-included offense instruction may be given to the jury, there must be 'some evidence in the record to rationally support a conviction on the lesser offense.'" Lord v. State, 107 Nev. 28, 37, 806 P.2d 548, 553 (1991) (quoting People v. Early, 692 P.2d 1116, 1120 (Colo. Ct. App. 1984)).

and between gas pumps, and yet no gas pumps were hit. There was further testimony that, though the three victims were hiding behind their car to avoid Walker's shots, and at least one of the victims was peering through a window watching Walker advance, the car was never hit. Finally, Walker did not chase the three victims farther than the edge of the parking lot. We therefore conclude that there is sufficient evidence which, if believed, would support a finding that Walker did not intend to kill the three victims and would therefore support a conviction on the lesser included offense of assault with a deadly weapon.

We conclude that the district court erred in refusing to submit to the jury Walker's requested instruction on assault with a deadly weapon. Assault with the use of a deadly weapon is a lesser included offense of attempted murder with the use of a deadly weapon, and defense counsel elicited evidence at trial which, consistent with the defense's theory of defense, would have supported a conviction for assault with the use of a deadly weapon instead of attempted murder. Accordingly, a jury instruction as to assault with the use of a deadly weapon should have been given.

We have carefully considered all other contentions of error on appeal and we conclude that they either lack merit or need not be further addressed. Since we cannot conclude beyond a reasonable doubt that the jury would not have convicted Walker of assault with the use of a deadly weapon rather than attempted murder had the instruction been given, we reverse Walker's three convictions for attempted murder and remand the case for a new trial.

YOUNG and SHEARING, JJ., concur.

STEFFEN, J., with whom SPRINGER, J., joins, dissenting:

In my view, the majority has incorrectly concluded that assault with the use of a deadly weapon is a lesser included offense of attempted murder. I also submit that the lesser related offense instruction, even if otherwise proper, should not have been given because it would have been inconsistent with Walker's theory of defense. I therefore dissent, convinced that Walker's convictions were justified by the evidence.

Because the majority would have affirmed Walker's convictions absent the district court's refusal to instruct the jury on assault with the use of a deadly weapon, I will primarily address the single issue upon which the majority bases its justification for reversal.

The majority declares that

> [s]ince an intent to injure is a subset of, and necessarily included in, an intent to kill, and since one cannot intend to

kill without also intending to injure, we conclude that assault with a deadly weapon is a lesser included offense of attempted murder with the use of a deadly weapon.

The majority's logic escapes me. Unless the majority has adopted the novel and unsupported interpretation of the term "injury" as an identical synonym for "kill," it seems irrefutably clear that a person could intend to assault and injure without intending to assault and kill. Life is replete with examples of assaults with deadly weapons where it has been evident that the intent was to injure *rather than to kill.* Moreover, I suggest that history confirms that far more often, assaults with deadly weapons occur as crimes of passion, intimidation or revenge with an intent to injure but not to murder.

Indeed, the majority observes that "[t]he only difference in this case, then, between attempted murder with the use of a deadly weapon and assault with a deadly weapon is whether at the time of the shooting Walker intended to kill the three victims or whether he intended merely to injure them." An element of the crime of attempted murder is the specific intent to kill. Graves v. State, 82 Nev. 137, 142, 413 P.2d 503, 506 (1966). If, as the majority writes, Walker "merely" intended to injure, rather than kill the three victims, he could not be convicted of attempted murder. He could, however, be convicted of assault with a deadly weapon. An assault with the intent to injure is an entirely different crime than the crime of attempted murder, which requires the specific intent to kill.

In Crawford v. State, 107 Nev. 345, 811 P.2d 67 (1991), we enunciated the test for determining whether a crime is a lesser included offense as "whether the offense in question cannot be committed without committing the lesser offense." *Id.* at 351, 811 P.2d at 71. It is patently clear that a person may commit attempted murder, with its specifically required element of intent to kill, without committing an assault with a deadly weapon, an offense which requires only the specific intent to injure.

Respectfully, I suggest that the majority's conclusion that "an intent to injure is a subset of, and necessarily included in, an intent to kill," is not a defensible proposition. The intent to kill is the intent to kill, not the intent to injure. The two types of intent are distinctly different and the crime for which a defendant may be found guilty will depend upon which of the two forms of intent motivated the actor as proved beyond a reasonable doubt.

Although Ruland v. State, 102 Nev. 529, 728 P.2d 818 (1986), may indeed be read for the proposition that an assault with a deadly weapon is a lesser included offense of attempted murder, I suggest that the point is not in the form of a holding, and that in

any event, we should clarify the opinion by making it clear that assault with a deadly weapon is not a lesser included offense of attempted murder.

It seems equally clear to me that assault with a deadly weapon would, in most cases, be a lesser *related* offense to attempted murder. In Lord v. State, 107 Nev. 28, 806 P.2d 548 (1991), we reaffirmed the right of a defendant to have the jury instructed on a lesser related offense when the following conditions are met: "(1) the lesser offense is closely related to the offense charged; (2) defendant's theory of defense is consistent with a conviction for the [lesser] related offense; and (3) evidence of the lesser offense exists." *Id.* at 36, 806 P.2d at 553. We also confirmed in *Lord* that lesser related offenses are "offenses which are related to the principal offense but are *not* lesser included offenses of the principal offense." *Id.*

Notably, defense counsel recognized that assault with a deadly weapon constituted a lesser related offense, and referred to it as such in the proffered defense instruction rejected by the district court. However, the district court apparently (with some justification) concluded that the lesser related offense was being offered as a lesser included offense, thus prompting the district judge to rule that "there is no lesser included offense for an attempt to kill." I suggest, however, that the real issue before us is whether the district court erred by not instructing the jury on the lesser related offense of assault with a deadly weapon. In my opinion, the district judge properly refused to give such an instruction.

In evaluating the test for a lesser related offense, stated above, it is clear that the first and third elements of the test are satisfied in the instant case. However, the second element, requiring a defense theory that is consistent with a conviction for the related offense, is absent here. The district court cogently described both defendant's evidence and theory as one of uninvolvement: Walker was assertedly not at the crime scene. Walker allegedly did not shoot a weapon. There was no case presented by the defendant suggesting that Walker was firing a weapon with an intent other than to kill or any intent at all, since he claimed he was neither present nor firing a weapon.

In *Ruland*, this court affirmed the district court's rejection of an assault instruction in an attempted murder case under circumstances far more compelling than here. *Ruland* involved a defendant who admitted having a weapon, but claimed that it discharged accidentally, and that he was not guilty of any attempt or threat to do bodily harm. This court in *Ruland* held that "Ruland's categorical denial of any criminal assault precludes his claiming any error resulting from the jury's not being instructed as to an assault theory." *Ruland,* at 532, 728 P.2d at 819-820.

In the instant case, Walker's defense was that he was not present; he fired no weapon.[1] It is therefore clear from our ruling in *Ruland* that the trial judge did not err in refusing to instruct the jury on the inconsistent theory of assault with a deadly weapon.

For the reasons discussed above, I would have affirmed Walker's convictions. I therefore dissent.

---

[1]It is true that defense counsel wanted the option to argue to the jury alternatively that if the jury found Walker present at the scene of the crime, the State nevertheless failed to prove beyond a reasonable doubt that Walker intended to kill the three victims that were being fired upon. Obviously, Walker's counsel could have argued that the State failed to meet its burden of proof concerning any element of the crime. However, Walker could not insist upon an instruction regarding assault with a deadly weapon when neither the evidence nor the questions presented by the defense related to Walker's presence at the scene or his lack of intent to kill. Walker's defense, entirely inconsistent with an assault instruction, was that he was not present and that he did no shooting.